A99A1672. SWEATT et al. v. INTERNATIONAL DEVELOPMENT CORPORATION et al.
(531 SE2d 192)

SMITH, Judge.
Would-be home buyers W. David Sweatt and Alicia P. Sweatt filed suit against International Development Corporation ("IDC")

and Christopher J. Bruns.[1] The Sweatts alleged that IDC and Bruns breached a real property purchase and construction agreement for a house being built for them by Bruns. IDC and Bruns counterclaimed for breach of contract and specific performance, and the Sweatts filed a lis pendens against the property. The Sweatts asked the court to order arbitration of all the controversies and claims arising from the purchase agreement or any alleged breach of it. The trial court ordered the parties to complete binding arbitration.

Before arbitration was concluded, both sides agreed to a consent order recognizing that IDC and Bruns had entered into a purchase and sale agreement for the property at issue with a third party and requiring IDC and Bruns to deposit the net proceeds of that sale into the registry of the court. IDC and Bruns subsequently sold the property for $373,000, or about $8,000 more than the contract price of $365,900 with the Sweatts. After payoff of the construction loan and payment of a real estate commission, the net proceeds realized by that sale, $89,017.77, were deposited into the registry of the court.

A few months later, the arbitrator found in favor of IDC and Bruns and against the Sweatts. The arbitrator awarded $25,000 to IDC and Bruns and ordered the release to IDC and Bruns of the funds being held by the court. As a consequence of that award, the Sweatts forfeited their $35,000 in earnest money and about $5,000 they had paid to Bruns for upgrades to the house during construction.

Asserting multiple grounds, the Sweatts moved to vacate or, in the alternative, to modify the arbitration award. They contended that the arbitrator had overstepped his authority, that the award demonstrated a manifest disregard of the law, and that the award was improperly calculated so as to constitute a double recovery. After reviewing the record and hearing argument of counsel, the trial court denied the Sweatts' motion and confirmed the "Final Judgment and Award" issued by the arbitrator. The Sweatts appeal that judgment.

1. In two enumerations of error, the Sweatts contend the trial court erred in denying their motion to vacate the arbitration award because the arbitrator overstepped his authority and the award demonstrates a manifest disregard of the law.

OCGA § 9-9-13 (b) sets forth the exclusive grounds upon which an arbitration award may be vacated. *Greene v. Hundley*, 266 Ga. 592, 595-596 (3) (468 SE2d 350) (1996); *Akintobi v. Phoenix Fire Restoration Co.*, 236 Ga. App. 760, 761 (513 SE2d 507) (1999). Unless prejudice is shown and one of the four statutory grounds for vacating or modifying an award is established, the Georgia Arbitration Code

[1] Bruns is the president of IDC.

requires a trial court to confirm an award upon timely application by a party. *Haddon v. Shaheen & Co.*, 231 Ga. App. 596-597 (1) (499 SE2d 693) (1998); see *Gilbert v. Montlick*, 232 Ga. App. 91, 93 (1) (499 SE2d 731) (1998).

Here, the Sweatts rely on the statutory ground that authorizes a trial court to vacate an award when the court finds that the rights of a party were prejudiced by "[a]n overstepping by the arbitrators of their authority." OCGA § 9-9-13 (b) (3). In this context, "overstepping" means that the arbitrator addressed issues not properly before him. *Ralston v. City of Dahlonega*, 236 Ga. App. 386, 388 (3) (512 SE2d 300) (1999). The Sweatts contend the arbitrator overstepped his authority by awarding damages not allowed by the contract. Compare *Atlanta Gas Light Co. v. Trinity Christian &c. Church*, 231 Ga. App. 617, 620 (2) (500 SE2d 374) (1998). They claim that an award to IDC and Bruns of actual damages violated the express terms of the contract which permitted only the recovery of liquidated damages. We agree. Compare *City of College Park v. Batson-Cook Co.*, 196 Ga. App. 138, 140 (395 SE2d 385) (1990) (trial court correctly affirmed an award supported by record of arbitration proceedings that showed the arbitrators did not ignore contract terms or applicable law).

During arbitration proceedings, the general rules of contract construction apply. *Martin v. RocCorp, Inc.*, 212 Ga. App. 177, 179 (441 SE2d 671) (1994). An arbitration award should be consistent with terms of the underlying agreement and reflect the "essence" of that contract; it must not demonstrate an "imperfect execution" of the arbitrator's authority. *Atlanta Gas Light*, supra. Although an arbitrator has some latitude in fashioning remedies, he is not free to ignore the express terms of a valid and enforceable contract. *Banderas v. Doman*, 224 Ga. App. 198, 201 (4) (480 SE2d 252) (1997).

In this case, the underlying contract required the submission of "[a]ny controversy or claim arising out of or relating to this contract, or the breach thereof," to binding arbitration. This was done. But the contract also required the application of OCGA § 13-6-7, the liquidated damages statute, and provided for liquidated damages in the event of breach by the buyer. This was not done.

It is undisputed that Section 4 of this contract, entitled "Liquidated Damages," set forth the seller's damages in the event of a breach by the Sweatts. This section provided in pertinent part:

Seller and Buyer acknowledge that it would be extremely impractical and difficult to ascertain the actual damages that would be suffered by Seller if Buyer fails to or refuses to consummate the purchase of the Property. . . . Seller and Buyer have considered carefully the loss to Seller as a consequence of the negotiation and execution of this Agreement;

the personal expenses Seller incurred in connection with the preparation of this Agreement; Seller's performance hereunder; and the other damages, general and special, which Seller and Buyer realize and recognize that Seller would sustain, but Seller cannot calculate with absolute certainty. Based upon all those considerations, Seller and Buyer have agreed that the damage to Seller would reasonably be expected to be equal to the amount of the earnest money. [In the event that Buyer breaches the agreement and Seller has fully performed its obligations,] *then Seller shall be entitled to retain the earnest money as full and complete liquidated damages for such default of Buyer*. Such retention of the earnest money is intended not as a penalty, but as full liquidated damages pursuant to O.C.G.A. § 13-6-7. However, in lieu of retaining the earnest money as liquidated damages, Seller shall have the right to bring an action for specific performance of the terms of the Agreement.

(Emphasis supplied.)

"If the parties agree in their contract what the damages for a breach shall be, they are said to be liquidated and, unless the agreement violates some principle of law, the parties are bound thereby." OCGA § 13-6-7. "A non-breaching party who has agreed to accept liquidated damages cannot elect after a breach to take actual damages should they prove greater than the sum specified." *Southeastern Land Fund v. Real Estate World*, 237 Ga. 227, 230 (227 SE2d 340) (1976). "The liquidated damages become the 'maximum as well as the minimum sum that can be collected.' [Cit.]" Id.

After the arbitrator determined the Sweatts breached the contract and were in default, only the amount of damages remained for resolution. But according to the undisputed terms of the contract, IDC and Bruns could obtain only $35,000, since the contract specified that retention of the earnest money would constitute "full and complete liquidated damages for such default." Having agreed to accept $35,000 as liquidated damages, IDC and Bruns could collect only that amount. *Southeastern Land Fund*, supra; compare *Banderas*, supra at 200 (3) (liquidated damages provision did not purport to apply to any and all breaches of the agreements but was limited to breaches of the restrictive covenant and nonsolicitation provisions). Here, as in *Liberty Life Ins. Co. v. Thomas B. Hartley Constr. Co.*, 258 Ga. 808, 809 (375 SE2d 222) (1989), no question exists that the parties intended to provide for liquidated damages or that the damages were a reasonable estimate of the probable loss.[2]

---

[2] The inherent uncertainty of calculating and forecasting actual damages is well illus-

Despite the explicit terms of the liquidated damages provision in the contract, the arbitrator awarded an additional $25,000 to IDC and Bruns.[3] IDC and Bruns also obtained a windfall of about $5,000 when the Sweatts forfeited all the additional funds they had provided to Bruns during construction for upgrades to the house. The amount of this award did not conform to the liquidated damages provision as specified in the contract. Compare *Banderas*, supra at 199 (1) (purchase agreement did not expressly limit arbitration to claims of breach of contract but covered all disputes arising from the agreement as well as alleged transgressions by one party or the other). Although IDC and Bruns may well have offered evidence to the arbitrator of actual losses, including construction loan interest, insurance premiums, and real estate taxes, having contracted for liquidated damages for a breach by the Sweatts, they were bound thereby. OCGA § 13-6-7. Since the contract specified liquidated damages in the event of the buyer's breach, any recovery for actual damages was foreclosed as a matter of law. *Southeastern Land Fund,* supra at 230; see *Fickling & Walker Co. v. Giddens Constr. Co.,* 258 Ga. 891, 898 (3) (376 SE2d 655) (1989).

2. The Sweatts further assert that the trial court erred by refusing to recalculate the amount of damages.

After timely application, under OCGA § 9-9-14 (b),

[t]he court shall modify the award if: (1) [t]here was a miscalculation of figures or a mistake in the description of any person, thing, or property referred to in the award; (2) [t]he arbitrators awarded on a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted.

Here, the calculation of actual damages was a matter not properly submitted, and the amount of the award may be corrected without affecting the merits of the arbitrator's decision upon the issues properly submitted. Since the amount awarded exceeded the total authorized by the contract, we vacate the award and direct the trial court to correct the miscalculation.

It is undisputed that IDC and Bruns violated the terms of the contract to maintain the earnest money of the Sweatts in a separate escrow/trust bank account.[4] Counsel for IDC and Bruns admitted in

---

trated by the fact that IDC and Bruns were able to sell the property for more than the contract price with the Sweatts and were able to net nearly $90,000 despite the breach. But housing markets typically fluctuate, and the converse could easily have occurred.

[3] In his findings of fact, the arbitrator decided, "Defendants have incurred expenses in the amount of $58,300.00."

[4] The arbitrator found: "Paragraph 12 of the Contract requires that Plaintiffs' earnest

court that the entire amount of $35,000 had been "spent on the house." Upon remand, since the $35,000 in earnest money was retained and spent by IDC and Bruns, the Sweatts would be entitled to recover the $25,000 erroneously awarded and the amount they are able to prove they expended for upgrades to the house, which IDC and Bruns concede was approximately $5,000. *Mid-American Elevator Co. v. Gemco Elevator Co.*, 189 Ga. App. 143, 145 (1) (375 SE2d 275) (1988) (after entire award is vacated, rehearing may be limited to specific issue necessitating that action).

*Judgment vacated and case remanded with direction. Pope, P. J., and Miller, J., concur.*

DECIDED MARCH 14, 2000.

*Altman, Kritzer & Levick, Joseph S. Carr, Jeanine L. Gibbs*, for appellants.
*Smith, Ronick & Corbin, Howard R. Ronick*, for appellees.
Christopher J. Bruns, *pro se*.

money be placed in an escrow account by the Defendants. (Plaintiffs' Ex. 1). Said funds were not placed in such an account, but the evidence and testimony gathered during this dispute show that all of the Plaintiffs' earnest money, and subsequent payments for upgrades and overages, was spent in the construction of the Property."